UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Maarten Propper and Sami Ahmad,** *Plaintiffs* | § § § | |
| v. | § § § § | |
| **StarStone Specialty Insurance Company f/k/a Torus Specialty Insurance Company,** *Defendant* | § § § § § | CIVIL ACTION NO. 4:19-CV-1752 |

### PLAINTIFFS MAARTEN PROPPER AND SAMI AHMAD'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiffs Maarten Propper and Sami Ahmad file this Original Complaint and Jury Demand complaining of StarStone Specialty Insurance Company f/k/a Torus Specialty Insurance Company as a consequence of Defendant's improper denial of insurance coverage to Plaintiffs in connection with an Underlying Lawsuit pending in the in the 269th Judicial District Court of Harris County, Texas styled Cause No. 2018-33381 styled *Lowell Cage, Chapter 7 Trustee for the Estate of Armada Water Assets, Inc., et. al., v. Maarten Propper and Sami Ahmad*.

### I.    PARTIES

1. Plaintiff Maarten Propper is an individual residing in Fort Bend County, Texas.

2. Plaintiff Sami Ahmad is an individual residing in Harris County, Texas.

3. Defendant StarStone Specialty Insurance Company f/k/a Torus Specialty Insurance Company is a surplus lines insurer incorporated in Delaware that engages in the business of insurance in the State of Texas. The defendant can be served through its agent for service of process, the commissioner of insurance: Chief Clerk Office, 333 Guadalupe, MC 113-2A, P.O. Box 149104, Austin Texas 78714-9104. Service is not requested at this time as

Plaintiffs are requesting a waiver of service pursuant to Rule 4 of the Federal Rules of Civil Procedure.

## II.   JURISDICTION AND VENUE

4.  Jurisdiction of this action is based on 28 U.S.C. §1332(a), there being diversity of citizenship between the parties, and an amount in controversy exceeding $75,000, exclusive of interest and costs, as the Underlying Lawsuit seeks monetary relief in excess of $1,000,000.

5.  Venue is proper in the Houston Division of the Southern District of Texas pursuant to 28 U.S.C. §1391(b) as the Policy was issued to the named insured, Armada, in Houston, Harris County, Texas.

## III.   FACTUAL BACKGROUND

6.  Armada Water Assets, Inc. operated a network of multistate comprehensive oilfield services companies providing treatment, transportation, disposal, and delivery of water and similar products for use in the oilfield industry. Wes-Tex Vacuum Service, Inc. is a subsidiary of Armada that assisted in transportation of water and similar products.

7.  From 2013 through 2016, Plaintiff Maarten Propper served as Armada's Chief Executive Officer. From 2013 through 2016, Plaintiff Sami Ahmad served as Armada's Chief Financial Officer. In addition to serving as executive officers, Plaintiffs both served on Armada's Board of Directors from 2013 through 2016.

### A. Armada and Wes-Tex File Bankruptcy

8.  Armada filed a Voluntary Petition for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, Cause No. 16-60056, on May 23, 2016. Wes-Tex also filed a Voluntary Petition for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, Cause No. 16-60055, on May 23, 2016.

Upon Armada's motion, the Bankruptcy Court ordered these matters be jointly administered under Armada's bankruptcy case, Cause No. 16-60056.[1]

9. On October 17, 2016, the Official Committee of Unsecured Creditors for the jointly administered case requested the execution of a Tolling Agreement to allow the Committee additional time to investigate alleged wrongful acts committed by Wes-Tex and Wes-Tex and Armada's current and former directors, employees and managers that may have caused Wes-Tex and Armada to sustain losses and incur liabilities. The Committee identified certain alleged wrongful acts that may give rise to liability relating to errors, omissions, neglect, breach of duties, self-dealing, conflicts of interest, and wasting of assets, etc. The allegations contained in the Tolling Agreement regarding allegedly improper actions taken by Armada implicated wrongdoing by Plaintiffs as officers and directors of Armada.

10. StarStone received notice of the Tolling Agreement and potential claims against Plaintiffs the same day, which was submitted under Private Company Management Liability Insurance Policy No. 43726D150ASP from Torus Specialty Insurance Company[2] with a policy period of July 22, 2015 to October 20, 2016 (the "Policy"). On November 30, 2016, StarStone agreed to provide Armada, Plaintiffs, and others with a defense with respect to the Committee's request to execute the Tolling Agreement.

**B. Trustee for the Estate Files Suit**

11. On May 17, 2018, Lowell Cage, the Chapter 7 Trustee for the Estate of Armada filed suit against Plaintiffs in Cause No. 2018-33381 styled *Lowell Cage, Chapter 7 Trustee for the Estate of Armada Water Assets, Inc., et. al., v. Maarten Propper and Sami Ahmad*; in the 269th Judicial District Court of Harris County, Texas ("Underlying Lawsuit"). On May 3, 2019,

---

[1] The Bankruptcy was converted to a Chapter 7 Bankruptcy on May 1, 2017.
[2] StarStone Specialty Insurance Company was formerly known as Torus Specialty Insurance Company.

3

the Underlying Plaintiffs filed an Amended Petition which alleges that in connection with a need to achieve new acquisitions and raise new capital, Plaintiffs made numerous alleged misrepresentations regarding Armada's most significant technology that were false or misleading, including that the technology was proprietary and exclusive to Armada and further, that Plaintiffs misrepresented Armada had exclusive rights to sell certain water through its subsidiary. *See* Ex. A, at ¶¶ 18, 22-27, 31. The Trustee claims Plaintiffs' misrepresentations injured Armada because it relied on the representations in deciding to file Chapter 11 Bankruptcy. *Id.* at ¶ 38.

12. The Petition states "[u]pon filing of the bankruptcy case, "all legal or equitable interests" of Armada and its subsidiaries became property of their bankruptcy estates (the "Estates") pursuant to 11 U.S.C. § 541," and that the causes of action belonging to the debtor. *See id.* at ¶ 41. The Petition also states that "a cause of action for breach of fiduciary duty owed to the corporation that is property of the corporation at commencement of the bankruptcy case becomes property of the debtor's estate" and "[b]ecause breach of fiduciary duty claims are property of the estate, any aiding and abetting claim is also property of the estate." *Id.* at ¶ 42.

13. Pursuant to the foregoing, the Trustee asserts causes of action for breach of fiduciary duty, aiding and abetting, and civil conspiracy against Plaintiffs "solely on behalf of the Estates." *Id.* at ¶ 43. Specifically, although the claims are denied, Armada allegedly relied on Plaintiffs' alleged representations in making business decisions and filing bankruptcy and allegedly sustained damages and loss as a result.

**C. The Policy**

14. Armada purchased Private Company Management Liability Insurance Policy No.

43726D150ASP from Torus Specialty Insurance Company[3] with a policy period of July 22, 2015 to October 20, 2016[4] (the "Policy"). The Policy is made up of multiple coverage parts, however, the most relevant coverage part at issue in this matter is Management Liability- Part 1 Directors & Officers Coverage ("D&O"), which contains the following Coverage Grant and the following pertinent definitions:

A. **INSURED PERSON LIABILITY INSURANCE**

The **Insurer** shall pay on behalf of the **Insured Person**, **Loss** arising from any **Claim** first made against the **Insured Person** during the **Policy Period** and reported to the **Insurer** during the **Policy Period** or within 60 days thereafter, for any **Wrongful Act**, except to the extent that such **Loss** has been paid or indemnified.

\*\*\*

A. **Claim** means:
1. a written demand for monetary, non-monetary or injunctive relief against an **Insured**, by reason of a **Wrongful Act**;
2. a civil, administrative, regulatory, arbitration or mediation proceeding against an **Insured**, by reason of a **Wrongful Act**, which is commenced by service of a complaint or similar document or the filing of a notice of charges;
3. an official request for **Extradition** of an **Insured Person**, or a criminal proceeding which is commenced by return of an indictment against an **Insured Person**, by reason of a **Wrongful Act**;
4. a criminal, administrative, or regulatory investigation of one or more **Insured Persons**, by reason of a **Wrongful Act**, commenced by the service upon, or other receipt by, an **Insured Person**, of a written notice from the investigating authority identifying the **Insured Person** as an individual against whom a formal proceeding may be commenced; or
5. a written request that an **Insured** sign an agreement to toll or waive any statute of limitations, by reason of a **Wrongful Act**.

**Claim** shall not include a **Derivative Demand, Health Act Notice**, or **Subpoena**, or any labor or grievance proceeding or investigation which is subject to a collective bargaining agreement. A **Claim** shall be deemed to have been first made at the time written notice of the **Claim** is first received by any **Insured**. All **Claims** arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** first made on the date on which the earliest such **Claim** was first made.

\*\*\*

C. **D&O Wrongful Act** means:
1. with respect to any **Insured Person**, any actual or alleged act, error or omission, misstatement, misleading statement, neglect, or breach of duty by such **Insured Person** in his or her capacity as such, or any matter claimed against them solely by reason of their status as an **Insured Person**;
2. with respect to the **Company**, any actual or alleged act, error or omission, misstatement, misleading statement, neglect, or breach of duty by the **Company**; or
3. any actual or alleged act, error or omission, misstatement, misleading statement, neglect, or breach of duty by an **Insured Person** in an **Outside Capacity**.

---

[3] StarStone Specialty Insurance Company was formerly known as Torus Specialty Insurance Company.
[4] General Change Endorsement effective July 22, 2016 extends the policy period from July 22, 2015 to October 20, 2016.

5

15. Additionally, the following definitions apply to all Coverage Parts of the Policy.

E. **Company** means the **Named Insured** and any **Subsidiary**. In the event of a bankruptcy proceeding by or against a **Company**, **Company** shall also mean the resulting entity named as a debtor in possession within the United States Bankruptcy Code, or an equivalent legal status under foreign law.

\*\*\*

K. **Executive Officer** means any natural person who was, or now is, a duly elected or appointed director, officer, trustee, governor, risk manager, or in-house general counsel of any **Company**, or any member of any **Company** advisory or scientific board. If the **Company** is a limited liability company, **Executive Officer** shall also mean a natural person who was, or now is, a member of the management board. **Executive Officer** also means the equivalent status of any of the foregoing under the law of any other country.

\*\*\*

N. **Insured** means the **Company** and any **Insured Person**.

\*\*\*

O. **Insured Person** means:
  1. Solely with respect to the Directors & Officers Coverage (Part 1); any past or present **Executive Officer** or **Employee**;
  2. Solely with respect to the Employment Practices Coverage (Part 2); any past or present **Executive Officer** or **Employee** but solely while acting within the scope of employment with the **Named Insured** or a **Subsidiary**;
  3. Solely with respect to the Fiduciary Coverage (Part 3), a director, officer, governor, or trustee of any **Plan**.

\*\*\*

R. **Loss** means **Damages** and **Defense Costs**.

16. Pursuant to these common Policy definitions, Armada and Wes-Tex are **Insureds** as Armada is the Named Insured and Wes-Tex is a subsidiary of Armada and additionally, Plaintiffs are **Insureds** because Plaintiffs both served as directors and officers of Armada. Defendant has conceded that Plaintiffs qualify as Insureds under the Policy and also that the Underlying Lawsuit meets the Inuring Grant under the Policy.

17. In addition to coverage under the Insuring Grant, the Policy creates coverage pursuant to an exception to the Insured v. Insured exclusion, which expressly and unambiguously carves out coverage for a lawsuit brought by a Trustee in connection with a bankruptcy proceeding (the exact context of the Underlying Lawsuit):

6

## IV. EXCLUSIONS

The **Insurer** shall not be liable under this Directors & Officers Coverage (Part 1) to pay any **Loss** arising from any **Claim** made against any **Insured**:

\*\*\*

D. which is brought or maintained by, on behalf of, or in the right of any **Insured** or any **Outside Entity** on behalf of which an **Insured Person** is or was serving in an **Outside Capacity**; or which is brought or maintained by any security holder of the **Company**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued completely independent of, and totally without the solicitation, assistance, active participation, or intervention of any **Executive Officer** or the **Company**; provided, however, this exclusion shall not apply to any **Claim**:

\*\*\*

4. brought on behalf of the **Company** in any bankruptcy proceeding, by any receiver, trustee, creditors' committee, examiner or similar official appointed to take control of, supervise or liquidate the **Company**, or any assignee of such receiver, trustee, creditors' committee, examiner, or similar official or entity; or

18.     In support of its denial of coverage, both defense and indemnity, StarStone improperly relies on Endorsement No. 4 to the Policy, the Creditor & Debt Holder Exclusion, which states as follows:

1. Section Part 5 Common Exclusions of this **Policy** is amended by the addition of the following:

   In addition to the Exclusions listed in the **Coverage Parts**, and notwithstanding Sub-section 1-5 of Exclusion D of Section IV of the Directors & Officers Coverage (Part 1), the **Insurer** shall not be liable under this Policy to pay any **Loss** arising from any **Claim** made against any **Insured**:

   1. CREDITOR OR DEBT HOLDER
      a. brought by or on the behalf of any creditor or debt holder of the **Company**;
      b. based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged liability to pay or collect any accounts, including, but not limited to, any **Claim** alleging misrepresentation in connection with the extension of credit or purchase of a debt instrument; or
      c. alleging any deterioration in the value of a debt as a result of (in whole or in part) the bankruptcy or insolvency of the **Company**;

2. Section E. **Company** of the Common Definitions (Part 4) of this Policy is deleted in its entirety and replaced with the following:
   E. **Company** means the **Named Insured** and any **Subsidiary**.

StarStone's reliance on the Creditor and Debt Holder exclusion is improper as the exclusion does not apply to the Underlying Lawsuit. Further, StarStone's unreasonable interpretation of the exclusion is in conflict with the exception to the Insured v. Insured

7

exclusion, which expressly creates coverage in this precise scenario – a lawsuit filed by a bankruptcy Trustee against former officers and directors of the Company. *See* Ex. A.

### D. StarStone Improperly Denies Coverage

19. Plaintiffs tendered the Underlying Lawsuit to StarStone on September 13, 2018 and requested defense and indemnity under all coverage parts of the Policy, including the D&O Coverage Form. StarStone acknowledged receipt of the claim the following day but did not accept its duty to defend and indemnify Plaintiffs in the Underlying Lawsuit. On November 6, 2018, Plaintiffs followed-up with their request for StarStone to defend and indemnify Plaintiffs in the Underlying Lawsuit. The following day, on November 7, 2018, StarStone sent correspondence confirming Plaintiffs are Insured Persons under the Policy and that the Trustee action fits within the coverage grant of the Policy as it arises from the same Wrongful Acts as those alleged in the Tolling Request and therefore, constitutes a Claim for a Wrongful Act first made and reported during the Policy Period. However, StarStone denied coverage for the Underlying Lawsuit based upon the Creditor & Debt Holder Exclusion.

20. Plaintiffs sent a demand letter on January 4, 2019 contending that StarStone improperly denied coverage because the Creditor & Debt Holder exclusion does not apply to preclude coverage for the Underlying Lawsuit and demanding StarStone accept its contractual obligations to defend and indemnity Plaintiffs. StarStone maintained its denial of coverage in a letter dated January 29, 2019, which necessitated the filing of this action as a result of StarStone's policy breaches as well as to seek declarations regarding the parties' rights under the Policy.

## IV. CAUSES OF ACTION

### A. DECLARATORY JUDGMENT

21. Plaintiffs incorporate the above paragraphs as though fully set forth herein.

22. Plaintiffs seek Declaratory Relief from this Court pursuant to 28 USC §2201 and FRCP 57. A dispute has arisen as to whether coverage is afforded under the Policy for the Underlying Lawsuit, specifically, as to whether StarStone must defend and indemnify Plaintiffs in the Underlying Lawsuit. StarStone wrongfully contends the Creditor & Debt Holder Exclusion precludes coverage. Pursuant to the plain and unambiguous terms of the Policy and applicable facts, however, coverage exists under the Policy and the Creditor & Debt Holder Exclusion does not apply. Therefore, Plaintiffs request a declaration that StarStone must defend and indemnify them in the Underlying Lawsuit.

#### i. The Creditor and Debt Holder Exclusion Does Not Apply

23. StarStone improperly denied coverage pursuant to the Creditor & Debt Holder Exclusion based on the flawed argument that the Underlying Lawsuit was brought by or on behalf of a creditor or debt holder of Armada. StarStone's reliance is misplaced and inconsistent with the plain allegations in the Underlying Lawsuit because the Underlying Lawsuit was not brought by or on behalf of any creditor or debt holder of Armada.

24. The Trustee asserts causes of action against Plaintiffs on behalf of Armada, not on behalf of Armada's creditors. The Underlying Petition expressly states that the Trustee asserts the claims in the Underlying Lawsuit "solely on behalf of the Estates." *See* Exhibit A at ¶ 43. As set forth in the First Amended Petition, Armada could have raised the claims asserted in the Underlying Lawsuit at the commencement of bankruptcy and thus, under established bankruptcy law, Armada's estate is the owner of the claims.

25. The origin of damages in the Underlying Lawsuit does not stem from the Trustee's role as a creditor of Armada. Therefore, under Texas law, the causes of action asserted by the Trustee do not belong to the creditors but instead belong to the Armada estate and thus, are asserted by the Trustee on behalf of the estate of Armada. *See In re Seven Seas Petroleum, Inc.,* 522 F.3d 575, 585 (5th Cir. 2008); *Schertz-Cibolo-Universal City, Indep. Sch. Dist. (Jn re Educators Grp. Health Trust),* 25 F.3d 1281, 1284 (5th Cir. 1994).

26. In the alternative and without waiving the foregoing, even if the Underlying Lawsuit was brought by or on behalf of Armada's creditors or debt holders, which is contrary to established bankruptcy law and the allegations in the Underlying Lawsuit, indisputably the Underlying Lawsuit is also bought on behalf of the estate of Armada. Accordingly, the Creditor & Debt Holder Exclusion would not exclude coverage for *all* claims as claims asserted by or on behalf of Armada are not excluded and therefore, StarStone has a duty to defend and indemnify Plaintiffs in the Underlying Lawsuit. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004).

27. Further in the alternative and without waiving the foregoing, StarStone has not offered a reasonable interpretation of the Policy. However, even if a Court were to find Starstone's interpretation reasonable, which Plaintiffs vehemently dispute, at a minimum, the Policy is ambiguous and must be construed in favor of Plaintiffs as the Insureds under the Policy. *See RSUI Indem. Co. v. The Lynd Co.,* 466 S.W.3d 113, 118-19 (Tex. 2015). Thus, any ambiguity as to the Creditor & Debt Holder Exclusion must be construed in favor of Plaintiffs as a matter of law and StarStone must defend and indemnify its Insureds in the Underlying Lawsuit.

    **ii.    The Exception to the Insured v. Insured Exclusion Provides Coverage**

28. StarStone's incorrect coverage denial is belied by the coverage provided under the

exception to the Insured v. Insured exclusion which expressly provides coverage for claims **"brought by or on behalf of the Company in any bankruptcy proceeding, by any receiver, trustee…appointed to take control of, supervise or liquidate the Company."** This is precisely the scenario that exists here as the claims in the Underlying Lawsuit are brought by the Trustee as contemplated under the Policy. The Policy cannot reasonably be construed to exclude coverage for a trustee claim that is expressly covered by the Policy. The plain and unambiguous terms of the Policy expressly create coverage for the Underlying Lawsuit, a Claim brought by Armada's trustee appointed by the Bankruptcy Court.

### iii. Illusory Coverage

29. Alternatively and without waiving the foregoing, the Policy provides illusory coverage in the event StarStone's improper interpretation is accepted by the Court. The exception to the Insured v. Insured Exclusion provides coverage for an action brought by Armada's trustee in connection with a bankruptcy proceeding. However, according to StarStone, any claim brought by Armada's trustee would be excluded under the Creditor & Debt Holder Exclusion based on the misguided argument that Armada's trustee is bringing claims by or on behalf of Armada's creditors or debt holders. Essentially, Defendant improperly gives with one hand and takes away with the other. Accordingly, coverage would never exist for an action brought by Armada's trustee under StarStone's interpretation, which renders coverage illusory and therefore, under Texas law, the Court must adopt Plaintiffs' reasonable interpretation.

30. Plaintiffs suffered damages as a result of the Policy's illusory coverage including but not limited to unreimbursed defense costs incurred to date, interest, attorneys' fees and costs incurred in pursuing insurance coverage, future defense costs, and indemnity, if any.

31. Plaintiffs request a declaration that StarStone owes a duty to defend and

11

indemnify Plaintiffs in the Underlying Lawsuit.

### B. BREACH OF CONTRACT

32. Plaintiffs incorporate the above paragraphs as though fully set forth herein.

33. StarStone has a contractual obligation under the Policy to defend and indemnify Plaintiffs in the Underlying Lawsuit. StarStone concedes Plaintiffs qualify as Insured Persons and that the Underlying Lawsuit fits within the coverage grant of the Policy. Yet, StarStone improperly denied coverage under the Creditor & Debt Holder exclusion.

34. Coverage is afforded under the Policy because the Creditor & Debt Holder exclusion does not apply to the Underlying Lawsuit because the Trustee brought the Underlying Lawsuit solely on behalf of the Armada estate and not on behalf of any creditor or debt holder of Armada. Further, the exception to the Insured v. Insured exclusion expressly provides coverage for the Underlying Lawsuit as a lawsuit brought by or on behalf of Armada's trustee in a bankruptcy proceeding.

35. StarStone's refusal to defend and indemnify Plaintiffs in the Underlying Lawsuit pursuant to the terms of the Policy constitutes a breach of contract with Plaintiffs.

36. As a result of that breach, Plaintiffs suffered damages, including unreimbursed defense costs in the past and future, pre and post judgment interest, attorneys' fees, court costs and future indemnity payments, if any.

### V. ATTORNEYS' FEES

37. Pursuant to Tex. Civ. Prac. & Rem. Code § 38.001, Plaintiffs are entitled to all attorneys' fees and expenses incurred through trial and any subsequent appeals in this matter. Plaintiffs have retained the undersigned law firm to prosecute these claims as a result of StarStone's breach of the Policy and have agreed to pay reasonable and necessary attorneys' fees

12

and costs in connection with this retention. Plaintiffs seek recovery of these fees and costs which would not be owed but for Defendant's conduct.

## VI. CONDITIONS PRECEDENT

38. All conditions precedent have been performed or have occurred.

## VII. JURY DEMAND

39. Plaintiffs demand a jury trial and tender the appropriate fee with this petition.

## VIII. CONCLUSION

FOR THESE REASONS, Plaintiffs Maarten Propper and Sami Ahmad request that Defendant StarStone Specialty Insurance Company f/k/a Torus Specialty Insurance Company be cited to appear and answer, and that upon final trial, Plaintiffs have the following:

A. A declaration that StarStone has a duty to defend and indemnify Plaintiffs under the Policy for the Underlying Lawsuit;

B. Actual damages;

C. Attorneys' fees;

D. Costs of suit; and

E. Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY

By:     */s/ Justin E. VandenBout*
        Justin E. VandenBout
        Attorney-in-Charge
        State Bar No. 24060765
        Federal ID No. 912644
        justin.vandenbout@chamberlainlaw.com
        1200 Smith Street, Suite 1400
        Houston, Texas 77002
        Phone: (713) 658-1818
        Fax: (713) 658-2553

        ATTORNEY FOR PLAINTIFFS

OF COUNSEL

C. Larry Carbo, III
State Bar No. 24031916
Federal ID No. 31117
Michelle L. Sloan
State Bar No. 24093037
Federal ID No. 2581020
CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY
larry.carbo@chamberlainlaw.com
michelle.sloan@chamberlainlaw.com
1200 Smith Street, Suite 1400
Houston, Texas 77002
Phone: (713) 658-1818
Fax: (713) 658-2553